THE AUGUSTA MANUFACTURING COMPAY *vs.* WELLBORN.

1. When the verdict of the Jury is for the plaintiff, and there is sufficient evidence to authorize and require the Jury to so find. and the Court below grants a new trial, that judgment is erroneous and will be reversed.

2. The interference by this Court with the discretion of the Court below in granting or refusing new trial is made a duty by the New Trial Act of 1853-4.

Complaint, in Whitfield Superior Court. Tried before Judge WALKER, at the April Term, 1860.

The Augusta Manufacturing Company brought suit against Chapley B. Wellborn, for the purpose of recovering the . amount due on the following account:

"C. B. WELLBORN,

"*To the Augusta Manufacturing Company.*

"1854.                                                      Dr.

"April 26th.   For 4 Bales ⅞ Bro. Cotton:

| | | | | |
|---|---|---|---|---|
| $133 54 | 6.84 · | | | |
| 133 67 | .6.95 | | | |
| 133 72 | 6.85 | | | |
| 133 75 | 7.03—2767 @ 7c. | | $193 | 69 |

For one Bale ¼   Bro. Cotton:

| | | | | |
|---|---|---|---|---|
| ·$135 88 | 6.80 | @ 8¼c. | $ 56 | 10 |
| Drayage ... ... ... ... ..... | | | | 25 |

"*At six months; due October 26th, 1854.*         ·  $250 04

---

**EXCESSIVE VERDICT—NEW TRIAL.** "A court should hesitate as little to set aside an excessive verdict when it is against a corporation as when it is in favor of a corporation. **Wild and extravagant recoveries** for injuries that, in themselves and in their consequences, are moderate, **are not to be upheld against anybody, or in favor of anybody.**" Harris *v.* Hines, 59 Ga. 427.

**NEW TRIAL, DUTY OF SUPREME COURT.** "A new trial was granted by the judge of the lower court in The City of Atlanta *v.* Bellamy, 72 Ga. 420, and we refused to interfere, although we were well satisfied that the verdict was supported by the law, and was in accordance with the decided weight of the evidence. Had we been on the jury, we would have returned the same verdict, but as **the discretion to grant or refuse the new trial was in the presiding judge,** and we differed with him only as to the propriety of·its exercise, even in that

The Augusta Manufacturing Company vs. Wellborn.

"1854.                                                                    Dr.
"Dec. 30th.   For 4 bales Bro. Cotton, ⅞ :
                  $139 73       6.92
                   139 81       7.04
                   139 85       7.03
                   139 96       6.09——2789 @ 7c.,   $195 23
              · For one Bale ¼  Bro. Cotton :
                  $151 95       8.50        @ 8¼c.  $ 70 78
                      Drayage ... ... ... ... .... ....      25
                                                        ──────────
"At six months; due June 30th, 1855              $516 39
"Sept.   By Cash on account, being balance of remit-
              tance of $240.00, after payment of bill, 1st
              February, 1854... ... ... ... ... ... ...$      70
                                                        ──────────
                      Balance due... ... ... ... .....$515 60

On the trial in the Court below, the plaintiff introduced in evidence the following letters, addressed to the agent of the plaintiff, to wit:

"DALTON, GA., April 25th, 1854.
"Mr. James Hope, Agent:
"Send me one Bale ¼ Domestic, and four Bales ⅞ Domestic.   Yours truly,        C. B. WELLBORN."

"DALTON, GA., Dec. 28th, 1854.
"Mr. James Hope, Agent:
"DEAR SIR:——Send me four Bales ⅞ Domestic, and one Bale ¼ do.   I will remit you the balance of former purchase about the 15th of January.   Money is scarce.   Times dull.
"Yours truly,                       C. B. WELLBORN."

The plaintiff, also, introduced in evidence the following railroad receipts, to wit:

"No. 227.   Georgia Railroad, Augusta Depot,  ⎫
               April 26th, 1854.   ,              ⎭

"Received, in good order, from Augusta Manufacturing Company, five Bales, marked: C. B. Wellborn, and consigned to same, Dalton Depot.   1040 Georgia Domestics.
                                     "EUL, Agent."

"Georgia Railroad, Augusta Depot, Dec. 30th, 1854.
"Received, in good order, from Augusta Manufacturing Company, five Bales, marked: C. B. Wellborn, consigned to same, Dalton Depot.   1100 Georgia Domestics.
                                     "BERRY, Agent."

extreme case we could not say that it had been palpably abused, and did not feel authorized to interpose.   We could, perhaps, interfere with more propriety in a case where the verdict was decidedly and strongly against the weight of evidence and a new trial had been refused, than in one where, under such circumstances, it had been granted.   There are certainly decisions justifying interference in the

The plaintiff, also, proved by its bookkeeper, that the goods charged in the account sued on, were sold and delivered at the time specified, and at the prices charged, and were sold on a credit of six months; that the smallest bill, usually sold by the plaintiff on a credit, was five bales, though a less number was sometimes sold for cash; that defendant purchased goods from the plaintiff twice, previous to the bills sued on in this case, and paid for them in about six months after they were delivered to him; that it was the settled rule and understanding between those who dealt with the plaintiff, and the plaintiff, that interest should be charged and paid after six months from the date of the purchase. The plaintiff then closed.

The defendant introduced the following receipt, to wit:

"AUGUSTA MANUFACTURING COMPANY. }
AUGUSTA, GA., Sept., 1854. }

"C. B. WELLBORN. *Dear Sir:*—Your favor of the 13th inst. is at hand, covering last halves of bank notes for two hundred and forty dollars, which is now at your credit.

"Yours truly,        JAMES HOPE, Treasurer."

The defendant, also, introduced Thomas B. Jolly, who testified: That, in the year 1855 (as he thinks), he saw the defendant mail two letters to the plaintiff by different mails, one containing the right, and the other the left-hand halves of bank bills; that he did not recollect the amount of the bills; thought it was one hundred and fifty, or two hundred and fifty dollars; rather thought it was the latter; that he did not remember what month the letters were mailed; that the letters were directed to somebody in Augusta, but he did not recollect who; that the letters were mailed before January. Being re-examined by the defendant, the witness stated: That he recollected that the letters were addressed to the Augusta Manufacturing Company, but did not recollect whether the name of James Hope, agent, was on them or not.

The presiding Judge certifies that this witness, Jolly, was evidently intoxicated at the time he testified.

The testimony being closed, the Court, amongst other things, charged the jury:

"That they were to decide from the proofs whether the money specified in the receipt introduced by the defendant was paid on the claim in suit in this case, or on some other

case suggested. 37 Ga. 557; 35 Id. 271. Discretion in refusing a new trial should not be arbitrarily exercised. 54 Id. 224; 31 Id. 365; 30 Id. 212. But in cases of a preponderance of evidence, this court has never controlled the discretion of the lower court in granting or refusing a new trial." City of Atlanta *v.* Brown, 73 Ga. 633.

claim; that the defendant is entitled to a credit for it somewhere, and if he has not received credit for it elsewhere, he is entitled to it on the account sued on."

Counsel for defendant requested the Court to charge the jury as follows, to wit:

"That a letter sent by mail is presumed from the known course of the department, to have reached its destination at the regular time, and to have been received (if addressed to the plaintiffs) at the plaintiffs' usual place of receiving letters. The Court remarking: "That, as a general rule, the principle of the request was true, but to make money, sent by mail, a valid payment, the debtor must show by proof either an express authority to remit by mail, or that it was the usual course of business between the parties for the defendant to remit money by mail at the plaintiff's risk."

Counsel for the defendant also requested the Court to charge the jury:

"That the fact that the claim sued on was nearly barred by the statute of limitation, before suit was brought, was a circumstance from which the jury might presume payment of the claim."

The Court refused so to charge the jury, but on that subject charged as follows:

"The mere fact that the plaintiff did not sue on the claim until it was nearly barred by the statute of limitations, did not, of itself, raise a presumption of payment, but it was a fact in the case, and the jury might consider it along with the other facts in the case, and from all the testimony, the jury would decide whether any of the claim had been paid, and if any, how much of it had been paid."

Counsel for defendant also requested the Court to charge the jury:

"That they might determine, and find as a question of fact from the testimony in the case, whether the defendant really mailed money to the plaintiff, and if so, whether it was in fact received by the plaintiff."

The Court refused to charge the jury as thus requested.

The jury returned a verdict in favor of the plaintiff for five hundred and fifteen dollars and sixty cents.

Counsel for the defendant then moved for a new trial of said case on the following grounds, to wit:

1. Because the Court erred in charging, and refusing to charge, as hereinbefore set forth.

2. Because the jury found contrary to law and evidence and against the weight of evidence.

Upon hearing said motion for a new trial, the presiding Judge passed an order, setting aside the verdict and awarding a new trial, and this decision is assigned as error in this case.

W. K. MOORE, for the plaintiff in error.

JACKSON, for the defendant in error.

*By the Court.*—LYON, J., delivering the opinion.

1. The new trial was erroneously allowed in this case, as we think the evidence was sufficient to authorize and require the jury to find for the plaintiff, as they did.

The two bills of goods, on which the suit was brought, were due and payable as follows: One for $250 was sold and delivered on the 26th of April, 1854, and due at six months, say on the 26th of October, 1854; the other was sold and delivered on the 30th of December, 1854, for $266.26, and due on the 30th of June, 1855. The plaintiff, having sufficiently proved the sale and delivery of these bills at the prices charged, was entitled to recover.

The payment made by the defendant, on the 13th September, 1854, of two hundred and forty dollars, evidenced by the letter of the treasurer of the 14th September, 1854, and which was plead by defendant as a part payment on the two bills, did not, in the opinion of this Court, apply properly as a credit to the bills sued on. The account sued on, and the evidence of the plaintiff, showed that the defendant had purchased a bill of goods previously to both of these, to wit: on the first of February, 1854, which was due on the first of August, 1854. The letter, acknowledging the receipt, and the only evidence defendant had of its payment, stated that it was to his credit and the account sued on, and the evidence of the clerk showed that that payment was applied to the bill that was sold on the first of February, 1854. Another circumstance is, that, when this remittance was made, neither of the two bills sued on was due. That of the first of February, 1854, was, and although there is nothing wrong in paying money on accounts in advance of their maturity,

The Augusta Manufacturing Company vs. Wellborn.

yet where there are two accounts, one past due a month and a half, and the other the same time to run before maturity, and a remittance is made, in the absence of all other proof, the presumption would be, that it was intended to apply to that which was past due. Another circumstance in this evidence, and a very conclusive one, is this: in the letter of defendant, of 28th December, 1854, and when the last bill of goods was ordered, he remarks—"I will remit you the balance of former purchase about the 15th January. Money is scarce. Times dull." If the remittance of $240, on 13th September, applied to the bill due 26th October, it would have paid the whole of that bill but about $10. Defendant would hardly have thought it necessary to excuse himself for so small a balance, when all but that had been paid up so long before its maturity. Then, again, the remittance was just the amount of the bill of 1st February, 1854, or within seventy cents of it. With all these circumstances to support the verdict of the jury, it ought not to be disturbed.

No importance was attached to the evidence of Jolly, either by counsel in the argument, or by this Court. What he did know about a remittance evidently related to that of September, 1854.

2. The interference by this Court with the discretion of the Court below, in granting or refusing a new trial, is made a duty by the new trial Act of 20th February, 1854. *Pam. Act* 47.

## JUDGMENT.

Whereupon, it is considered and adjudged by the Court, that the judgment of the Court below be reversed, upon the ground that the Court erred in granting a new trial in said case.